ORIGINAL

FILED
NOV 30 2004
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-----------------------------------------x

HITECH SECURITY CORPORATION,

Plaintiff,

-against-

UNITED STATES OF AMERICA,

Defendant.

-----------------------------------------x

NO. 04-1610 C

ECF

AMENDED COMPLAINT

Assigned to: Judge Edward J. Damich

Plaintiff, by its attorneys, KIRSCHENBAUM & KIRSCHENBAUM, P.C., as and for its second amended complaint herein, alleges:

1. That at all times hereinafter mentioned, plaintiff was and still is a domestic corporation with a place of business in the County of Nassau.

2. Upon information and belief, at all times hereinafter mentioned, United States Department of Housing and Urban Development, was and still is a federal agency transacting business in the State of New York.

3. Upon information and belief, at all times hereinafter mentioned, Arco Management Corp., was and still is a domestic corporation, transacting business in the State of New York.

4. Plaintiff is duly licensed as a burglar and fire alarm business by the New York State Secretary of State, license number 12000005231.

6. This action, originally commenced in the Supreme Court, State of New York, County of Nassau, Index No.:03-009284, was removed to the United States District Court, Eastern District of New York, pursuant to 28 U.S.C. § 1442(a).

7. By Order of the District Court, this action was transferred to this Court pursuant to 28

U.S.C. § 1631.

## AS AND FOR A FIRST CAUSE OF ACTION

7. U.S. Department of Housing and Urban Development ("HUD"), through its agent Arco, entered into a written contract, dated February 1, 2000, a copy of which is annexed as Exhibit "A", whereby plaintiff agreed to monitor fifty (50) roof alarms for HUD at the agreed upon price of $156,000.00 for a period of 5 years.

8. On or about March 1, 2003, HUD breached the aforesaid contract by failing to make the payment due on that date or any payments due thereafter.

9. By reason of the foregoing, HUD owes plaintiff the agreed sum of $156,000.00, no part of which has been paid except $96,200.00, leaving a balance due of $59,800.00 due and owing.

## AS AND FOR A SECOND CAUSE OF ACTION

10. HUD, through its agent Arco, entered into a written contract, dated February 1, 2000, a copy of which is annexed as Exhibit "B", whereby plaintiff agreed to service fifty (50) alarm systems for HUD at the agreed upon price of $54,000.00 for a period of 5 years.

11. On or about March 1, 2003, HUD breached the aforesaid contract by failing to make the payment due on that date or any payments due thereafter.

12. By reason of the foregoing, HUD owes plaintiff the agreed sum of $54,000.00, no part of which has been paid except $33,300.00, leaving a balance due of $20,700.00 due and owing.

## AS AND FOR A THIRD CAUSE OF ACTION

13. Pursuant to the terms of the contracts between the parties, HUD is obligated to pay finance charges of 2% per month on all amounts due and owing.

## AS AND FOR A FOURTH CAUSE OF ACTION

14. Pursuant to the terms of the contracts between the parties, HUD is obligated to pay

plaintiff's legal fees in the amount of $26,565.00.

WHEREFORE, plaintiff demands judgment against HUD on the first cause of action in the sum of $59,800.00; on the second cause of action in the sum of $20,700.00; with interest at 24% per annum pursuant to the terms of the contract on the first and second causes of action from March 1, 2003; against HUD on the fourth cause of action in the sum of $26,565.00; or such other amount as the court deems appropriate, together with costs and disbursements of this action.

Dated: Garden City, New York
November 24, 2004

KIRSCHENBAUM & KIRSCHENBAUM, P.C.

By: ______________________
Kenneth Kirschenbaum, Esq.
Attorneys for Plaintiff
200 Garden City Plaza
Garden City, NY 11530
(516) 747-6700
(516) 747-6781

I:\COLLECT\HITECH\Beekman\Amended Complaint for Court of CLaims.wpd

# EXHIBIT A

# CENTRAL STATION ALARM LEASING AGREEMENT

This Agreement made this FIRST day of FEB 2000 by and between HI-TECH SECURITY (hereinafter referred to as the "Company") and HUD / BEEKMAN HOUSES (hereinafter referred to as the "Subscriber"). The Company will lease, install, monitor and service a Central Station Alarm System at the Subscriber's premises located at MULTIPLE LOCATIONS in the City of BRONX, State of N.Y. Zip ............ Telephone No. (718) 292 2626

The parties hereto agree that:

**1.CENTRAL STATION ALARM SYSTEM IS LEASED AND REMAINS PERSONAL PROPERTY OF THE COMPANY:** The Company shall lease, install, or cause to be installed and service the Central Station Alarm System, described herein, including all necessary devices, and equipment, without liability and not as an insurer for the term of this Agreement. The entire Central Station Alarm System including devices, instruments, apparatus, equipment, cabinets as well as all parts, decals, wires, conduits, foil, screens, switches panels or other materials associated therewith is and shall always remain the sole and exclusive personal property of the Company and shall not be considered a fixture or a part of the realty. The Subscriber shall not permit the attachment thereto of any appartus, equipment and devices not furnished and installed by the Company.

**2. SCHEDULE OF INSTALLATION: DESCRIPTION OF EQUIPMENT:** (See attached schedule)

50 - ROOF Alarm Central Station Transmitters

**3. INSTALLATION, LEASE AND SERVICE CHARGES: SUBSCRIBER'S DEFAULT:** The Subscriber agrees to pay the Company, its Agents or Assigns,

(a) The sum of $...... 0 ...., plus tax, for the installation of the Central Station Alarm System, of which $........ 0 .... is payable as a down payment at the time of signing of this Agreement, and the balance of $.... 0 ......., plus tax, is due upon completion of installation. The Subscriber acknowledges that the installation charge quoted in this Agreement is based on the Company's ability to perform the installation during normal working hours and with its own personnel, if for any reason this installation or any part thereof must be performed by an outside contractor or during other than normal working hours said installation charge is subject to a surcharge which shall reflect the additional cost.

(b) The monthly charge in the sum of $52.08 EA shall be billed and paid monthly, ~~quarterly~~, ~~semi-annually~~, ~~annually~~, payable in advance for the leasing, servicing and monitoring of the Central Station Alarm System for the term of this Agreement. The first payment is due upon completion of the installation, and the following payments are due commencing the first day of the next period succeeding and continuing thereafter, all payments being due on the first day of that period. The Company reserves the right to change the billing period at any time during this Agreement. The Subscriber agrees to pay all invoices rendered, in accordance with this Agreement, by the Company within five (5) days of the date thereof, and further agrees to pay a late payment charge at the highest legal rate on all unpaid balances due the Company.

The parties agree that due to the nature of the services to be provided by the Company, the primary consideration for the Company entering into this Agreement is the Subscribers promise to make the payments provided herein for the full term of this Agreement, and it is understood and agreed that in the event of the Subscriber's default, it would be impossible to fix the Company's actual damages for a period less than the full term of this Agreement.

**4. TERM OF AGREEMENT: RENEWALS:** The term of this Agreement shall be for a period of five (5) years commencing upon the date of the completion of the installation. This Agreement shall renew itself for a period of one (1) year and for successive periods of one (1) year thereafter under the same terms and conditions unless either party shall give written notice to the other of it's intention to terminate this Agreement, such notice to be given not more than thirty (30) days nor less than fifteen (15) days before the end of the term of this Agreement or any renewal thereof, unless shorter notice for termination is contained herein.

**5. ASSIGNMENTS:** The Subscriber shall not be permitted to assign this Agreement without written consent of the Company first being obtained and any such assignment without at least thirty (30) days advance notice and prior approval shall be deemed a breach of this Agreement. The Subscriber may not assign any rights inuring under this Agreement or under the relationship created hereby voluntarily or by operation of law without having obtained the written consent of the Company. The company shall have the right to assign this Agreement and shall be relieved of any obligations created herein upon such assignment.

**6.THE SUBSCRIBER'S CARE OF EQUIPMENT: REPAIRS AND ADDITIONS:** The Subscriber agrees not to tamper with, remove or otherwise interfere with the Central Station Alarm System. The equipment shall remain in the same location as installed and the Subscriber agrees to bear the cost of repairs, replacement, relocation or additions to the Central Station Alarm System made necessary as the result of any painting, alteration, remodeling, environmental conditions, aging, or damage, including fire, water, vandalism, riot, act of God, or damage caused by unauthorized intrusion to the premises, or if the underwriters or any inspection bureau or agency, company or anybody having jurisdiction shall require any changes. Changes shall be paid for by the Subscriber in accordance with the standard charges of the Company in addition to all other charges mentioned herein and an additional charge shall be made for repairs necessitated by other than ordinary wear and tear.

**7. THE SUBSCRIBER'S DUTY TO SUPPLY ELECTRIC AND TELEPHONE SERVICE:** The Subscriber agrees to furnish, at its expense, all uninterrupted 110 Volt AC power and electrical outlets and receptacles, telephone hook-ups, 42A block, leased lines, RJ31X coupler or equivalent, as deemed necessary by the Company in its sole discretion. The Company shall not be responsible for held liable for telephone hook-ups, 42A block, leased lines, RJ31X coupler or equivalent that it neglected or chose not to be furnished, or if anytime during the Agreement an authority having jurisdiction deems necessary. The Company shall not be responsible or held liable for losses incurred due to the termination of any of these connections of services due to the failure to have any of these devices or "equipment installed.

**8. REMOVAL OF CENTRAL STATION ALARM SYSTEM:** Upon termination or default of this Agreement, the Company shall be permitted access to the Subscriber's premises to remove the Central Station Alarm System in whole or part at the Company's option, however, nothing herein contained shall be deemed a waiver by the Company of the Subscriber's obligation to pay the payment and payment charge herein provided for. If for any reason caused by the Subscriber or the owner of the premises if other than the Subscriber, said Central Station Alarm System is not recovered by the Company within thirty (30) days after termination or default, said Central Station Alarm System shall, at the Company's option, be deemed sold to the Subscriber for the amount set forth herein as the value of the equipment. The Agreed value of the equipment is $. 265.00 EACH.

The Subscriber agrees to give the Company at least thirty (30) days notice in writing of the Subscriber's intention to vacate the premises above mentioned, and for failure to do so, the Company shall hold the Subscriber liable for any and all damages sustained by the company as a result of the failure to notify the Company of such intentions. The Subscriber" agrees to furnish the Company, when required, with a landlord's waiver and consent to remove all, if any, of the above equipment that is affixed or to be affixed to realty during the leasing period, such release is to be furnished prior to such affixation.

**9. DELAY IN INSTALLATION:** The Company shall not be likable for any damage or loss sustained by the Subscriber as a result of delay in installation or stoppage in the installation of the above referenced equipment and Central Station alarm System, or for interruption of service due to electrical failure, telephone line failure, interruption of public or private carrier service, strikes, fire, flood, lock-outs, litigation, walk-outs, union requirements, war, acts of God or causes beyond the Company's control, and will not be required to supply service to the Subscriber while interruption of service due to any such cause shall continue. In the event pending of an interruption of service, the Subscriber shall make all payments provided for in this Agreement unless at the option of the Company they shall be suspended pending restoration of service. The Company shall not be liable for consequential damages of any nature in the event of equipment failure by reason of a defect in the workmanship or material provided to the Subscriber, except at the option of the Company, repair or replacement of such defective equipment or workmanship or as herein may be further provided.

**THE TERMS AND CONDITIONS OF THIS AGREEMENT ARE CONTINUED ON THE REVERSE SIDE AND ARE A PART OF THIS AGREEMENT REGARDLESS OF THE FACT THAT THEY APPEAR AFTER THE PLACE FOR EXECUTION. PLEASE READ THEM BEFORE SIGNING THIS AGREEMENT.**

| HI-TECH SECURITY | SUBSCRIBER |
|---|---|
| By: ______ *Agent* *Signature* | [signature] SUBSCRIBER *(Print full business name)* |
| *Agent* *Print Name* | By: [signature] *Signature* *Title* |
| Approved by: [signature] Pres. *Title* | Print Name: Joseph J. Driscoll |
| Date March 17 2002 | Date 3/14 2000 |

**THIS AGREEMENT IS SUBJECT TO ACCEPTANCE BY AN OFFICER OF THE COMPANY BEFORE IT IS BINDING.**

The undersigned hereby personally guarantees the performance and obligations of this Agreement by the Subscriber and the payments of all sums due thereunder in the event of default, hereby waiving any modification, amendment or extensions of this Agreement and notice thereof. It shall not be necessary for the Company to pursue any remedies against the Subscriber before seeking compliance with this Guaranty by the undersigned.

______ *Print Name* By: ______ *Signature*

# EXHIBIT B

HITECH SECURITY

ALARM SYSTEMS
BURGLAR • FIRE • HOLDUP
TELEPHONE INSTALLATIONS
CUSTOM CABLE T.V. WIRING

P.O. BOX 910
LONG BEACH, N.Y. 11561
(516) 889-9163
FAX: (516) 889-9160

# SUBSCRIBER OWNED EQUIPMENT SERVICE AGREEMENT

Agreement made this First day of Feb, 2002 between HiTech Security (Hereafter referred to as HiTech) and ___

*The parties hereto agree that:*

1A. ALARM SYSTEM IS OWNED AND REMAINS THE PERSONAL PROPERTY OF THE SUSCRIBER: Hitech shall service upon Subscriber's request, tha alarm system in Subscriber's premisesbetween the hours of 9 a.m. and 5 p.m. Monday through Friday, within reasonable time after receiving notice from subscriber that service is required, exclusive of Saturday's and legal holidays. All repairs, replacement or alteration to the alarm system made by reason of alteration to subscribers's premises, or caused by unauthorized intrusion, lightning or electrical surge , or caused by any means other than normal usage, wear and tear, shall be made at the cost of the subscriber. No apparatus or device shall be attached to or connect with the alarm system as originally installed without HiTech's written consent.

## 1B. COVERAGE

This contract covers 100 % material cost.

2. PAYMENTS DUE UNDER THIS AGREEMENT: Subscriber agrees to pay the sum of $ 18.00 ~~plus tax~~ per month, ~~payable quarter annually in advance~~ for the term of this agreement, commencing the first day of the month next succeeding the date hereof, all payments being due in the first of the month. The parties agree that due to the nature of the services to be provided by the HiTech, the payments to be made by the Subscriber for the term of this agreement form an integral part of HiTech's anticipated profits; that in the event of Subscriber's default it would be impossible to fix HiTech's actual damages. Therefore, in the event Subscriber defaults in the payment of any charges to be paid to HiTech, the entire balance of all payments for the entire term herein shall immediately become due and payable, and Subscriber shall be liable therefore.

3. LATE CHARGES: Subscriber agrees to pay late charges as agreed herein on any unpaid charges as of the 5th. of every month, from previous months invoice, as follows:
On any balance, less than $10.00, owed prior to the 5th. of the month, and not paid, the minimum charge is $1.00, on balances of $10.01 to $250.00, minimum charge is $5.00, and on balances over $250.00, the charge is 2% of the outstanding balance. All late charges are compounded monthly.

4. TERM OF AGREEMENT: RENEWALS: The terms of this agreement shall be for a period of five (5) years. This agreement shall renew itself for a period of five (5) years and for successive periods of one (1) year thereafter under the same terms and conditions, unless either party gives written notice to the other by certified mail, return receipt requested, of their intention not to renew the contract at least thirty days prior to the expiration of any term.

## SUBSCRIBER:

Name Dept. of HUD / Beekman Houses
Address Multiple Locations
City Bronx State NY Zip 10454
Phone (718) 292 2626
(Hereinafter Referred to as "SUBSCRIBER".)

5. INCREASE OF MONTHLY CHARGE: SUBSCRIBER'S OPTION TO TERMINATE AGREEMENT: Subscriber agrees that at any time following the expiration of the first twelve (12) months of this agreement, HiTech may increase the monthly charge specified in paragraph 2, annually, for the balance of the term and any renewal thereof. Subscriber agrees to pay the full amount of such increase which does not exceed a nine (9) percent increase over the previous twelve (12) months charges, and the Subscriber agrees to pay such increase without option to terminate. In the event HiTech increases the monthly charge by an amount greater than nine (9) percent herein agreed to, and if Subscriber is unwilling to pay such increased charge, HiTech shall be permitted, as its option, upon written notice to Subscriber, to terminate this agreement as if the term had expired and Subscriber shall be relieved of any obligation to pay any monthly charge. Subscriber's failure to object to any such increase within ten (10) days of notification thereof shall be deemed an acceptance of said increase.

*For Residential Customers Only*

## Notice of Cancellation

You, the Buyer, may cancel this contract at any time prior to midnight of the third day of this transaction. See attached notice of cancellation form for an explanation of this right.

NOTICE TO THE SUBSCRIBER (1) DO NOT SIGN THIS LEASE BEFORE YOU THOROUGHLY READ IT OR IF IT HAS ANY BLANK SPACE TO BE FILLED IN; (2) YOU HAVE THE RIGHT TO GET A FILLED-IN COPY OF THIS LEASE. THE SUBSCRIBER STATES THAT HE HAS READ BOTH SIDES OF THIS LEASE AND THAT HE HAS BEEN GIVEN A FILLED-COPY OF THE LEASE AT THE TIME HE SIGNS IT. IF THE SUBSCRIBER BELIEVES ANY PROMISES OR AGREEMENTS WERE MADE BY HITECH OR ANY OF ITS EMPLOYEES THAT ARE NOT SET FORTH IN THIS LEASE, THE SUBSCRIBER SHOULD NOT SIGN THIS LEASE.

SUBSCRIBER [signature]

By: ___ Title: ___

*Print Name* Joseph Russell Date: ___

*The undersigned personally guarantees Subscriber's performance of this agreement.*

*SEE REVERSE SIDE FOR TERMS AND CONDITIONS OF THIS LEASE WHICH ARE PART OF THIS LEASE. READ THEM BEFORE YOU SIGN THIS LEASE.*

[illegible] AND SERVICE OF ALARM SYSTEM: The parties agree that the alarm system, once installed, is in the exclusive possession and control of the Subscriber, and it is Subscriber's sole responsibility to test the operation of the alarm system and to notify HiTech in writing if it is in need of repair. HiTech shall not be required to service the alarm system unless it has received written notice from Subscriber, and upon such notice, HiTech shall service the equipment to the best of its ability within 36 hours, exclusive of Saturday, Sunday and legal holidays, during the business hours of 9 a.m. and 5 p.m. Monday through Friday.

In the event Subscriber complies with the terms of this agreement and HiTech fails to repair the equipment within 36 hours after notice is given excluding Saturdays, Sundays and legal holidays, Subscriber agrees to send written notice that the alarm system is in need of repair to HiTech by certified or registered mail, return receipt requested. If HiTech fails to repair the alarm system within 48 hours after receipt of said written notice, lessee shall not be obliged to pay any amount for service from date said written notice is given, until the alarm system is restored to working order. In any lawsuit between the parties in which the condition or operation of the alarm equipment is in issue, the Subscriber shall be precluded from raising the issue that the alarm equipment was not operating unless Subscriber can produce a post office certified or registered receipt, signed by HiTech, evidencing that service was requested by Subscriber.

7. WARRANTIES AND REPRESENTATIONS: BUYER'S EXCLUSIVE REMEDY: HiTech does not represent for warrant that the alarm system will prevent any loss, damage or injury to person or property, by reason of burglary, theft, hold-up, fire or other cause, or that the alarm system will in all cases provide the protection for which it is installed or intended. Subscriber acknowledges that HiTech is not an insurer, and that Subscriber assumes all risk for loss or damage to Subscriber's premises or its contents. HiTech has made no representations or warranties, and hereby disclaims any warranty of merchantability or fitness for any particular use. Subscriber's exclusive remedy for HiTech's default hereunder is to require HiTech to repair or replace, at HiTech's option, any equipment or part of the alarm system which is non-operational. Subscriber authorizes HiTech to access the control panel to input or delete data and programming.

8. DELAY IN INSTALLATION: HiTech shall not be liable for any damage or loss sustained by Subscriber as a result of delay in installation of equipment, equipment failure, or for interruption of service due to electrical failure, strikes, walkouts, war, acts of God, or other causes, including HiTech's negligence or gross negligence in the performance of this contract. The estimated date work is to be substantially completed is not a definite completion date and time is not of the essence.

[illegible]. FALSE ALARMS AND POLICE RESPONSE: HiTech shall have no liability for false alarms, false alarm fines, police response, or the refusal of police to respond. In the event of termination of police response by the municipal police this contract shall nevertheless remain in full force and Subscriber shall remain liable for all payments provided for herein.

[illegible]. CONTRACTOR'S LIEN: HiTech or any subcontractor engaged by HiTech to perform the work or furnish material who is not paid may file a lien against Subscriber or the owner of the premises if other than the Subscriber which may be enforced against the property in accordance with the applicable lien laws.

[illegible]. DEPOSIT OF PAYMENT: HiTech is legally required to deposit all payments received prior to completion in accordance with New York [illegible] Law, [illegible] of section seventy-one-a, and in lieu of such deposit HiTech may post a bond or contract of indemnity with [illegible] guaranteeing the return or proper application of such payments to the purposes of this contract.

[illegible]. INDEMNITY: Subscriber agrees to and shall indemnify and hold harmless the HiTech, or its employees, agents and subcontractors, from and against all claims, lawsuits including reasonable attorney's fees, and losses asserted against and alleged to be caused by HiTech's performance or failure to perform its obligations under this agreement. Parties agree that there are no third party beneficiaries of this agreement.

13. LEGAL ACTION: In the event HiTech institutes legal action to recover any amounts owed by Subscriber to HiTech hereunder, the parties agree that the amount to be recovered, and any judgement to be entered, shall include the full accelerated unexpired term of the agreement, and at HiTech's option, the value of the equipment and that upon Subscriber's failure to defend the action, judgement shall be entered by the Clerk of the Court, together with interest, costs and disbursements. Subscriber shall pay HiTech's legal fees of 33% of every amount due HiTech by Subscriber. The parties waive trial by jury in any action between them. In any action commenced by HiTech against Subscriber, Subscriber shall not be permitted to interpose any counterclaim.

14. EXCULPATORY CLAUSE: The parties agree that HiTech is not an insurer and no insurance coverage is offered herein. Subscriber's payments to HiTech are for the installation, rental and service of an alarm system designed to reduce certain risks of loss, though HiTech does not guarantee that no loss will occur. HiTech is not assuming liability and therefore shall not be liable to Subscriber for any loss or damages sustained by Subscriber as a result of burglary, theft, hold-up, fire, smoke, equipment failure, or any other cause whatsoever, regardless of whether or not such loss or damage was caused by or contributed to by HiTech's negligent performance or failure to perform any obligation. Subscriber releases HiTech from any third party claims for contribution or indemnity.

15. LIMITATION OF LIABILITY: The parties agree that the alarm system and central station transmitter is not designed or guaranteed to prevent any loss by burglary, theft, and other illegal acts of third parties, or loss by fire, smoke or water or any other cause. If, notwithstanding the terms of this agreement, there should arise any liability on the part of the HiTech as a result of burglary, theft, hold-up, fire, smoke, equipment failure or any other cause whatsoever, regardless of whether or not such loss, damage, or personal injury was caused by or contributed to by HiTech's negligent or gross negligent performance or failure to perform any obligation; such liability will be limited to an amount equal to six (6) times the monthly payment paid by Subscriber to HiTech at the time such liability is fixed, or to the sum of $250.00, whichever is greater. If Subscriber wishes to increase the HiTech's maximum amount of such limitation of liability, Subscriber may, as a matter of right, at any time, by entering into a supplemental agreement, obtain from HiTech a higher limit by paying an additional amount consonant with the increase of liability. This shall not be construed as insurance coverage.

16. FULL AGREEMENT SEVERABILITY: This agreement constitutes the full understanding of the parties and may not be amended or modified except in writing signed by both parties. Should any provision of this agreement be deemed void, the remaining parts shall not be affected.

17. ASSIGNMENTS: Subscriber shall not be permitted to assign this agreement without written consent of HiTech and any such assignment without prior approval shall be deemed a breach of this agreement. HiTech shall have the right to assign this agreement and shall be relieved of any obligations created herein upon such assignment. Subscriber on its behalf and any insurance carrier waives any right of subrogation Subscriber's insurance carrier may otherwise have against HiTech or HiTech's subcontractors arising out of this agreement or the relation of the parties hereto.

18. ADDITIONAL PAYMENT FOR TAXES: In addition to the payments set forth herein, Subscriber agrees to be liable for and pay to HiTech any excise, sales, property, or any other tax, telephone line charges, and any increase thereof, which may be imposed upon HiTech because of this agreement.

19. CONFLICTING DOCUMENTS: Should there arise any conflict between this agreement and Subscriber's purchase order or other document, this agreement will govern, whether such purchase order or document is prior or subsequent to this agreement.